UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
                                                                        :
MUHAMMAD MIRZA and ALLIED MEDICAL AND                                   :   19-CV-6775 (ARR) (VMS)
DIAGNOSTIC SERVICES, LLC,                                               :
                                                                        :   NOT FOR ELECTRONIC
                    Plaintiffs,                                         :   OR PRINT PUBLICATION
                                                                        :
    -against-                                                           :   OPINION & ORDER
                                                                        :
ANA GOLAN,                                                              :
                                                                        :
                    Defendant.                                          :
----------------------------------------------------------------------- X

ROSS, United States District Judge:

On December 2, 2019, plaintiffs Dr. Muhammad Mirza ("Dr. Mirza") and Allied Medical and Diagnostic Services, LLC ("Allied Medical") commenced this diversity action against *pro se* defendant Ana Golan ("Golan"). Compl., ECF No. 1. The complaint alleges that Golan committed "blatant acts of defamation and tortious interference with contracts" when she posted a review of medical services that she received from Dr. Mirza on the website Yelp.com ("Yelp"). *Id.* ¶ 1. On May 22, 2020, defendant filed a motion to dismiss, arguing that the court lacks subject-matter jurisdiction over this case and that plaintiffs fail to state a claim upon which relief may be granted. Mot. Dismiss 1, 4–6, ECF No. 11. Plaintiffs filed their opposition to defendant's motion on July 3, 2020, Opp'n Mot. Dismiss, ECF No. 15, and defendant filed a reply on August 25, 2020, Reply, ECF No. 16.

For the reasons set forth below, defendant's motion to dismiss is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, drawn from plaintiffs' December 2, 2019 complaint, are presumed to be true for the purpose of this motion to dismiss. *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

Plaintiff Dr. Mirza is a physician domiciled in New Jersey and licensed in both New Jersey and New York. Compl. ¶ 4. He is the sole member of plaintiff Allied Medical, a Delaware limited liability company through which Dr. Mirza operates his medical practice. *Id.* ¶¶ 5, 11–14. As part of this practice, Dr. Mirza provides injections of Botulinum toxin A ("Botox"), which has "various medical applications, but most patients seek out elective treatments for cosmetic applications." *Id.* ¶¶ 15–16.

Defendant Golan, a resident of New York, is one of "a handful of disgruntled Botox patients" who "have chosen to voice false and defamatory accusations" targeting plaintiffs on Yelp. *Id.* ¶¶ 6, 18. On or about December 2, 2018, Golan allegedly posted the following review on Yelp, under the username "Ana G.":

> He is a fraud. Went in for Botox and did not see results. He did not show me the Botox bottle. As soon as I walked into the room he had the syringe in his hand and as soon as I sat he poked me twice. Didn't feel like anything was injected. 2 weeks later no results. He operated by many aliases: spa fit, Dr Mirza, Mirza aesthetics and several locations.

*Id.* ¶¶ 19–20.[1]

Plaintiffs allege that this review is "viewed by thousands of visitors each day," *id.* ¶ 2, and that "several patients have read the review and have called or messaged to inquire about the truth

---

[1] A copy of the review has not been provided to the court. Plaintiffs have provided a link to a webpage where the review supposedly "remains active" and is "accessible as to the public on the Internet." *Id.* ¶¶ 2, 19. This link, however, directs to a Yelp webpage collecting reviews for "Mirza Aesthetics." The review in question does not appear to be among them.

of the false statements therein and cancelled scheduled appointments," *id.* ¶ 28. As a result of Golan's actions, "a number of Dr. Mirza's patients (or prospective patients) have refused to start and/or continue business with Plaintiffs." *Id.* ¶ 29; *see also id.* ¶ 46 ("Plaintiffs' patients, customers and vendors and prospective patients . . . [have] cease[d] doing business with Plaintiffs.").

On December 2, 2019, plaintiffs filed their complaint, bringing claims of defamation per se, trade libel, tortious interference with contractual relations, and tortious interference with prospective contractual relations. *Id.* ¶¶ 31–49.[2] After I granted an initial extension of time, defendant filed the present motion to dismiss on May 22, 2020, arguing that the court lacks subject-matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Mot. Dismiss 1, 4–6. Following additional extensions of time, plaintiffs filed their opposition to the motion on July 3, 2020, Opp'n Mot. Dismiss, and defendant filed a reply on August 26, 2020, Reply.

## STANDARD OF REVIEW

Defendant Golan moves to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are substantively "identical," *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999), although on a 12(b)(1) motion the party invoking the court's jurisdiction bears the burden of proof, whereas on a 12(b)(6) motion

---

[2] Plaintiffs' "first" cause of action mentions both defamation per se and trade libel (the "defamation claims"), Compl. ¶¶ 31–41, and plaintiffs' "second" cause of action mentions both tortious interference with contractual relations and tortious interference with prospective contractual relations (the "tortious interference claims"), *id.* ¶¶ 42–49. I thus consider the complaint to bring these four separate claims.

3

the moving party bears this burden, *see Baskerville v. Admin. for Children's Servs.*, No. 19-CV-602 (AMD) (LB), 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020). In deciding both motions, I must construe the complaint liberally, "accepting all factual allegations . . . as true, and drawing all reasonable inferences in [plaintiffs'] favor." *Lundy*, 711 F.3d at 113 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Dismissal is proper under Rule 12(b)(6) for failure to state a claim when the complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though plaintiffs do not need to include "detailed factual allegations" in the complaint, "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). I am "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Because Golan is proceeding *pro se*, her motion to dismiss is held to a less stringent standard than one drafted by an attorney. *See, e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). "A document filed *pro se* is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and it should be read "to raise the strongest arguments that [it] suggest[s]," *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Nonetheless, I "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *McManamon v. United States*, No. 15-CV-352 (RRM)

(JO), 2017 WL 2665028, at *2 (E.D.N.Y. June 20, 2017) (quoting *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995)).

## DISCUSSION

### I. Subject-Matter Jurisdiction

Defendant Golan argues that the court lacks subject-matter jurisdiction because the complaint fails to meet either the amount-in-controversy requirement or the complete diversity requirement under 28 U.S.C. § 1332. Mot. Dismiss 1. For the following reasons, I find that these requirements have indeed been met.

#### a. Amount-in-Controversy Requirement

Plaintiffs must demonstrate to a "reasonable probability" that their claims are in excess of the statutory jurisdictional amount of $75,000. *See Scherer v. Equitable Life Assurance Soc'y of United States*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted); 28 U.S.C. § 1332(a). "This burden is hardly onerous, however," because courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer*, 347 F.3d at 397 (citation omitted). Golan faces a "high bar for overcoming this presumption": She "must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Id.* (citation and quotation marks omitted). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982).

Golan argues that it is "inconceivable" that her single Yelp review "alone has caused" damages in excess of $75,000 because the complaint "alleges [that] damages are a result of . . . alleged statements never made by defendant" and because of the "abundance of negative reviews" posted on Yelp and other online forums by similarly dissatisfied patients. Mot. Dismiss 1–3.

Defendant points out, and plaintiffs concede, that the complaint refers to multiple statements apparently not attributable to defendant. *See* Compl. ¶ 37 (alleging that defendant "falsely accused" Dr. Mirza of "being a 'scam artist'" or "not actually being a licensed and/or trained medical doctor"); Opp'n Mot. Dismiss 4 n.2 (acknowledging that the complaint "inadvertently stated the wrong phrases"). Yet the existence and content of defendant's allegedly defamatory review are averred to elsewhere in the complaint. *See* Compl. ¶¶ 20, 24. Whether and to what extent defendant's review may have caused the damages alleged—including in light of reviews posted by patients not involved in this suit—are questions to be resolved on the merits, not at the jurisdictional stage. *See Zacharia*, 684 F.2d at 202 ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits.").

Thus, although I entertain doubts about the possibility that plaintiffs could recover damages greater than $75,000, I cannot conclude "to a legal certainty" that plaintiffs could not recover an amount in excess of this statutory minimum, and I accept the complaint's good-faith representation that the amount-in-controversy requirement is met. *See, e.g.*, *Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 WL 7392214, at *2 n.3 (S.D.N.Y. Dec. 21, 2016).

### b. Diversity Requirement

Plaintiffs must plead complete diversity to successfully bring an action in federal court arising out of state law claims of defamation and tortious interference. *See, e.g.*, *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 484 & n.3 (S.D.N.Y. 2013); 28 U.S.C. § 1332(a)(1).

Golan appears to argue that because Dr. Mirza is "licensed in New York, with a principal office . . . [in] New York," he should be considered a citizen of New York for diversity jurisdiction purposes. Mot. Dismiss 3–4. But "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir.

6

2000). Here, plaintiffs allege that Dr. Mirza is domiciled in New Jersey, and Golan does not dispute that she is domiciled in New York. *See* Compl. ¶¶ 4, 6. Further, Allied Medical, as a limited liability company, takes the New Jersey citizenship of Dr. Mirza, its sole member. *See id.* ¶ 5; *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019) ("[A] limited liability company . . . takes the citizenship of all of its members."). Plaintiffs have thus adequately pleaded complete diversity.[3]

## II. Failure to State a Claim

### a. Defamation Claims

Plaintiffs allege that defendant Golan posted a review on Yelp "for the purpose of publishing false and defamatory statements" about plaintiffs that have caused "substantial[] and irreparabl[e] harm," giving rise to their claims for defamation per se and trade libel. Compl. ¶¶ 2–3, 26–30. Specifically, plaintiffs take issue with the review's characterization of Dr. Mirza as a "fraud" as well as its apparent assertions regarding the medical services that Golan received from Dr. Mirza. *Id.* ¶ 24.

Golan argues that plaintiffs' defamation claims should be dismissed because her Yelp review expressed an unactionable statement of opinion, Mot. Dismiss 8–9, because Dr. Mirza is a limited-purpose public figure and plaintiffs have not pleaded actual malice on the part of Golan,

---

[3] Golan further contends that Dr. Mirza "falsely manufacture[d] a basis for diversity jurisdiction by bringing the lawsuit on behalf of" Allied Medical, an entity that "is not mentioned in the review" and with which Golan has not directly transacted business. Mot. Dismiss 3–4. But even if Allied Medical were dismissed from this suit, the court would still retain diversity jurisdiction since, as discussed above, Dr. Mirza and Golan are alleged to be citizens of different states, and Dr. Mirza is not obligated to include as a plaintiff the purportedly non-diverse entity with which Golan asserts that she did transact business. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 125 (2d Cir. 2003), *as amended* (Apr. 16, 2003) ("[W]e [are not] aware of any principle that prevents an injured party from choosing among potential co-plaintiffs based on diversity concerns.").

7

*id.* at 6–7, and because Dr. Mirza consented to the posting of the review, *id.* at 7–8.

For the following reasons, I dismiss plaintiffs' claims for defamation per se and trade libel.

### i. Defamation Per Se

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). "An action for defamation that is expressed in writing or print"—including on the Internet—"constitutes the common law cause of action for libel." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007); *see also, e.g.*, *Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 88 (2d Cir. 2003). Under New York law, to state a claim for libel, plaintiffs must allege: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm"—that is, unless the statement constitutes defamation per se. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (1st Dep't 2014)). A statement that "tend[s] to injure another in his or her trade, business, or profession" may constitute defamation per se. *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *4 (E.D.N.Y. Mar. 26, 2018) (quoting *Konig v. CSC Holdings, LLC*, 977 N.Y.S.2d 756, 758 (2d Dep't 2013)).

"As a threshold matter, a court must determine whether a particular statement can reasonably constitute defamation." *Doe v. White Plains Hosp. Med. Ctr. (WPHMC)*, No. 10-CV-5405 (GBD), 2011 WL 2899174, at *2 (S.D.N.Y. July 8, 2011), *aff'd sub nom. Doe v. French*, 458 F. App'x 21 (2d Cir. 2012) (summary order). This is because "statements that express opinions or hyperbole, rather than facts, do not constitute actionable defamation." *Goldman v. Reddington*, 417 F. Supp. 3d 163, 172 (E.D.N.Y. 2019). In particular, "pure opinion"—"a statement of opinion

8

which is accompanied by a recitation of the facts upon which it is based"—is "not actionable because a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture." *Doe*, 2011 WL 2899174, at *3 (citations and quotation marks omitted); *see also, e.g.*, *Primiani v. Vintage 185 Inc.*, No. 18-CV-2237 (ADS) (AYS), 2019 WL 486087, at *3 (E.D.N.Y. Feb. 6, 2019); *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) .

Whether a statement is "opinion" or "fact" depends on the following factors: (i) whether the specific language has a precise meaning that is readily understood or whether it is indefinite and ambiguous; (ii) whether the statement is capable of being objectively characterized as true or false; (iii) the immediate context of the communication in which the statement appears; and (iv) the communication's broader social context or setting, which might "signal to readers . . . that what is being read . . . is likely to be opinion, not fact." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 403 n.7 (2d Cir. 2006) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)). Courts should avoid "hypertechnical parsing" of written words in an attempt to "identify[] 'possible facts' that might form the basis of a sustainable libel action.'" *Doe*, 2011 WL 2899174, at *3 (quoting *Dworin v. Deutsch*, No. 06-CV-13265 (PKC), 2008 WL 508019, at *4 (S.D.N.Y. Feb. 22, 2008)).

Here, "given the context in which the challenged statements were made and viewing the content of the review as a whole, a reasonable reader would have believed that the writer of the review was a dissatisfied customer who utilized the Yelp website to express an opinion," rather than facts. *Crescendo Designs, Ltd. v. Reses*, 58 N.Y.S.3d 112, 113 (2d Dep't 2017).

First, as courts in New York have made clear, "use of the word 'fraud' can be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016)

9

(summary order). And Golan's terse assertion that "[Dr. Mirza] is a fraud" is precisely "of the loose, figurative, or hyperbolic sort that is not actionable for defamation." *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (citation and quotation marks omitted) (holding that statement accusing plaintiff of "extortion, manipulation, fraud, and deceit" is not actionable defamation); *see also, e.g.*, *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143 (1992) (holding that statement that "the lease and proposition . . . is as fraudulent as you can get" is not actionable defamation); *Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 814 (Sup. Ct. 2005) (holding that allegations of fraud were "merely . . . statement[s] of defendant's personal opinion about the quality of services provided by plaintiff company"); *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (holding that "epithets" such as "crooks . . . are hyperbole and therefore not actionable opinion"); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 463 (S.D.N.Y. 2012) (holding that "use of the terms 'shyster' [or] 'con man' . . . is the type of 'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion" (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).

Moreover, the subsequent statements contained in the review either are patently subjective, *see* Compl. ¶ 20 (alleging that Golan wrote that she "did not see results" and "[d]idn't feel like anything was injected"), or they comprise "a recitation of the facts upon which" Golan's negative experience with and opinion of Dr. Mirza as a "fraud" are based, *see id.* ("He did not show me the Botox bottle. As soon as I walked into the room he had the syringe in his hand and as soon as I sat he poked me twice. . . . 2 weeks later no results."), such that the statements, taken together, should fairly be considered pure opinion, *see Doe*, 2011 WL 2899174, at *3.

Second, "[i]n addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements

10

were published, including the nature of the particular forum." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see also Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000) ("A court may also consider whether the 'general tenor' of the publication negates the impression that challenged statements imply defamatory facts about the plaintiff." (quoting *Milkovich*, 497 U.S. at 21)). The "larger context" for Golan's review is the website Yelp, an online forum whose express purpose is to "provide[] an opportunity for people to post both negative and positive reviews, stating their opinions and their perceptions of the relative merits of the reviewed service providers." *Feinberg v. Lans*, 67 Misc. 3d 1232(A), at *2 (N.Y. Sup. Ct. 2020). Unsurprisingly, "New York courts have consistently protected statements made in online forums as statements of opinion rather than fact." *Bellavia Blatt & Crossett, P.C.*, 151 F. Supp. 3d at 295. Given the nature of interactive platforms like Yelp, there is a "common expectation" that statements published therein "will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion." *Brian*, 87 N.Y.2d at 53; *see also Brahms v. Carver*, 33 F.Supp.3d 192, 199 (E.D.N.Y.2014) (holding that statement was nonactionable opinion where it was "made on an internet forum where people typically solicit and express opinions"); *Torati v. Hodak*, 147 A.D.3d 502, 503 (1st Dep't 2017) ("While the Internet reviews contain elements of both fact and opinion, when viewed in context, they suggest to a reasonable reader that the author was merely expressing his opinion based on a negative business interaction with plaintiffs . . . ."); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415–16 (1st Dep't 2011) (noting that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts"). Thus, the setting of Golan's allegedly defamatory statements—an online forum dedicated to the sharing of opinions and

11

reviews of goods and services—"signal[s] to readers . . . that what is being read . . . is likely to be opinion, not fact." *Kirch*, 449 F.3d at 403 n.7 (quoting *Steinhilber*, 68 N.Y.2d at 292).

For the foregoing reasons, plaintiffs' defamation per se claim is dismissed.[4]

### ii. Trade Libel

"Trade libel is the knowing publication of false and derogatory material regarding one's business, that is calculated to prevent others from doing business with the defamed party or otherwise interferes with one's business relationships." *Sandler v. Simoes*, 609 F. Supp. 2d 293, 302 (E.D.N.Y. 2009) (quoting *Penn Warranty Corp.*, 810 N.Y.S.2d at 813). Under New York law, to state a claim for trade libel, plaintiffs must allege: "([1]) falsity of the alleged statements; ([2]) publication to a third person; ([3]) malice; and ([4]) special damages." *Pasternack v. Lab. Corp. of Am.*, No. 10-CV-4426 (PGG), 2014 WL 4832299, at *19 (S.D.N.Y. Sept. 29, 2014) (quoting *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02-CV-9567 (KNF), 2003 WL 22410623, at *7 (S.D.N.Y. Oct. 21, 2003)), *aff'd sub nom. Pasternack v. Lab. Corp. of Am. Holdings*, 839 F.3d 151 (2d Cir. 2016). "The requirement of pleading and proving special damages is applied strictly," and "a motion to dismiss a claim of [trade libel] may be granted for failure to allege special damages with the requisite specificity." *Id.*[5]

As with their claim for defamation per se, plaintiffs' claim for trade libel requires them to adequately plead that Golan published a defamatory statement of fact. *See Sandler*, 609 F. Supp.

---

[4] Because I find that the Yelp review in question consists of unactionable opinion, I do not address Golan's additional arguments that Dr. Mirza is a public figure or that he consented to publication of the review.

[5] "Trade libel," "injurious falsehood," and "product disparagement" are all used interchangeably to refer to the same cause of action. *See, e.g.*, *Pasternack*, 2014 WL 4832299, at *19.

2d at 303 ("[A]s with other defamation claims, a claim of trade libel may be defeated by a showing that the subject statements, when read in context, would be perceived by a reasonable person to be nothing more than personal opinion."). Because I have already found that Golan's review does not contain any such statements, plaintiffs' trade libel claim fails for the same reason as their defamation per se claim. *See supra* Section II.a.i.

Plaintiffs' trade libel claim also fails for at least two additional reasons. First, since the trade libel claim is "in essence a restatement of plaintiff[s'] defamation claim," this claim must be dismissed as duplicative of plaintiffs' defamation per se claim. *O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing trade libel claim where it "relie[d] on the same statements that form[ed] the basis of the defamation claim"), *aff'd*, 101 F.3d 1479 (2d Cir. 1996); *see also, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 & n.23 (S.D.N.Y. 2016) (collecting cases).

Second, "to the extent the [plaintiffs'] trade libel claim is *not* duplicative of [their] defamation *per se* claim, it suffers from another fatal deficiency: [Plaintiffs] do[] not adequately plead special damages." *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 292. In fact, plaintiffs do not plead any dollar amount of damages related to their trade libel claim, let alone provide the sort of specificity required to successfully plead special damages. Plaintiffs' bare invocations of "harm," "injur[y]," "damages," or "lost sales and profits" are insufficient. Compl. ¶¶ 2, 3, 30, 38, 40; *see, e.g.*, *Pasternack*, 2014 WL 4832299, at *19 ("Plaintiffs have not alleged special damages with the requisite specificity, and this pleading defect is sufficient, standing alone, to justify dismissal of their trade libel claim."); *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 292 ("If the special damage was a loss of customers . . . the persons who ceased to be customers . . . must be named . . . . [I]f they are not named, no cause of action is stated." (quoting *Drug*

*Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441 (1960))); *Matherson v. Marchello*, 473 N.Y.S.2d 998, 1000–01 (2d Dep't 1984) ("[Special damages] must be fully and accurately identified with sufficient particularity to identify actual losses . . . . When loss of business is claimed, the persons who ceased to be customers must be named and the losses itemized." (citation and quotation marks omitted)).

For the foregoing reasons, plaintiffs' trade libel claim is dismissed.

### b. Tortious Interference Claims

Plaintiffs allege that Golan "internationally [sic] and improperly interfered with Plaintiffs' contracts with Plaintiffs' patients, customers and vendors and prospective patients, and did so with the intent and purpose of damaging Plaintiffs' business and reputation." Compl. ¶¶ 43–45. This "interference caused Plaintiffs' patients, customers and vendors and prospective patients . . . to cease doing business with Plaintiffs." *Id.* ¶ 46.

Golan argues that plaintiffs' tortious interference claims should be dismissed because plaintiffs have not adequately pleaded that Golan "had knowledge of existing contracts or future contracts or that her actions resulted in interference with contractual relations or resulted in negation of a prospective contract." Mot. Dismiss 6. Golan further contends that plaintiffs have not shown that Golan "acted by 'wrongful means.'" *Id.*

For the following reasons, I dismiss plaintiffs' claims for tortious interference with contractual relations and tortious interference with prospective contractual relations.

Under New York law, to state a claim for tortious interference with contractual relations, plaintiffs must allege: "(1) 'the existence of a valid contract between the plaintiff[s] and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of

the contract'; and (5) 'damages resulting therefrom.'" *Kirch*, 449 F.3d at 401–02 (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). Similarly, to state a claim for tortious interference with prospective contractual relations, plaintiffs must allege that: "(1) [they] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Id*. at 400 (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)).[6]

To prevail on these claims, plaintiffs must allege the existence of a specific valid contract or business relationship with which defendant interfered. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010) ("[T]he complaint fails entirely to describe any third party with whom [plaintiff] had prospective business relations to be interfered with . . . . The lack of such an allegation is fatal to this claim." (citation omitted)); *Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, No. 17-CV-2913 (NGG) (RER), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017) ("The complaint falls short of the required pleading standard, as it fails to identify any specific business relationship with which the . . . Defendants allegedly interfered."); *Ganske v. Mensch*, No. 19-CV-6943 (RA), 2020 WL 4890423, at *8 (S.D.N.Y. Aug. 20, 2020) ("In order to state a claim [for tortious interference with a contract], the plaintiff is required to 'identify a specific contractual term that was breached.'" (quoting *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005))); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013) ("[A]s a

---

[6] Tortious interference with "prospective contractual relations," "prospective customer relations," "prospective economic advantage," and "business relations" are all used interchangeably to refer to the same cause of action. *See, e.g.*, *Kirch*, 449 F.3d at 400; *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 461 (S.D.N.Y. 2017); *Brown v. AXA RE*, No. 02-CV-10138 (LTS) (AJ), 2004 WL 941959, at *7 (S.D.N.Y. May 3, 2004).

rule, conclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference."); *id.* (explaining that the law "requires a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage").

Both of plaintiffs' tortious interference claims must be dismissed because, just like plaintiffs' trade libel claim, they are duplicative of plaintiffs' defamation per se claim. *See supra* Section II.a.ii. "New York law considers claims sounding in tort to be defamation claims, not only where those causes of action seek[] damages only for injury to reputation, . . . but also where the entire injury complained of by plaintiff flows from the effect on his reputation." *Jain v. Sec. Indus. & Fin. Mkts Ass'n.*, No. 08-CV-6463 (DAB), 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009) (citations and quotation marks omitted). Thus, where "claims brought under the guise of other causes of action actually sound in defamation, even if the plaintiff alleged economic harm," those claims will be dismissed as duplicative of a defamation claim. *Lesesne*, 918 F. Supp. 2d at 225 (collecting cases); *see also, e.g.*, *Goldman v. Barrett*, No. 15-CV-9223 (PGG), 2017 WL 4334011, at *7–8 (S.D.N.Y. July 25, 2017), *aff'd*, 733 F. App'x 568 (2d Cir. 2018) (summary order); *Pusey v. Bank of Am., N.A.*, No. 14-CV-04979 (FB) (LB), 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015).

Here, plaintiffs' tortious interference claims are "clearly premised on the same set of facts as their defamation claim." *Goldman*, 2017 WL 4334011, at *8. These "non-defamation tort claims seek compensation for damage to [Dr. Mirza's] professional reputation . . . caused by [defendant's] alleged publication of defamatory statements" on Yelp. *Pusey*, 2015 WL 4257251, at *4; *see* Compl. ¶¶ 26–30. Since the "entire injury pleaded in relation to the tortious interference . . . cause[s] of action flows from the effect of the defamatory comments on Plaintiffs' reputation," the

16

tortious interference claims must be dismissed as duplicative. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014); *see also, e.g.*, *Chao v. Mount Sinai Hosp.*, No. 10-CV-2869 (HB), 2010 WL 5222118, at *11 (S.D.N.Y. Dec. 17, 2010) ("Where tort claims essentially restate a defamation claim that has been dismissed on a motion to dismiss, the tort claims must also be dismissed.").

Plaintiffs' tortious interference claims also fail for multiple additional reasons. Plaintiffs' allegations are simply "too conclusory, vague, and lacking in a factual basis to make out [their] tortious interference claim[s]." *DiFolco*, 622 F.3d at 115 (citing *Black Car & Livery Ins., Inc. v. H&W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (2d Dep't 2006)). At best, the complaint merely restates the elements of the applicable causes of action, alleging that Golan "internationally [sic] and improperly interfered with Plaintiffs' contracts." Compl. ¶¶ 43–46; *see also id.* ¶ 27 ("Defendant scripted and caused to be disseminated the above statements in order to interfere with Plaintiffs' contractual relationships with its patients, customers and vendors, and upon information and belief, to injure Plaintiffs' business by inducing Plaintiffs' patients, customers and vendors and prospective patients to cease doing business with Plaintiffs."). These conclusory allegations are insufficient to sustain claims for tortious interference under New York law. *See DiFolco*, 622 F.3d at 114–15 (finding insufficient plaintiff's allegations that "[d]efendants intentionally interfered with Plaintiff's professional relationships and opportunities for employment and that [d]efendants' actions permanently injured Plaintiff's business relationships in the [news and entertainment] industry . . . [which] gave rise to damages flowing from harm to [plaintiff]'s career development, economic harm in the form of lost income and benefits, harm to her professional and personal reputation, and harm consisting of mental anguish and emotional distress" (quotation marks omitted)).

17

Relatedly, the complaint does not identify any specific contract or business relationship with which Golan has allegedly interfered. Rather, plaintiffs allege only that they "had and continue to have contractual relationships with their patients, customers and vendors"—and that Golan "interfered" with those contracts—without naming a single one. Compl. ¶¶ 26–29, 43–46. Such specificity is required under New York law, and its absence here is fatal to plaintiffs' tortious interference claims. *See DiFolco*, 622 F.3d at 115; *Von Rohr Equip. Corp.*, 2017 WL 5184676, at *7; *Ganske*, 2020 WL 4890423, at *8; *Lesesne*, 918 F. Supp. 2d at 227.

Needless to say, where plaintiffs fail to plead the existence of a specific contract or business relationship, plaintiffs also fail to plead defendant's "knowledge" of such a contract or business relationship, as required to make out either claim for tortious interference under New York law. *See* Compl. ¶ 44 (alleging vaguely that "Defendant knew of Plaintiffs' contracts"). Similarly, plaintiffs fail to plead an "actual breach" of a specific contract, as required to make out a claim for tortious interference with contractual relations. *See id.* ¶¶ 28–29, 46 (alleging only that patients have "cancelled scheduled appointments," "refused to . . . continue business with Plaintiffs," or "cease[d] doing business with Plaintiffs").

For the foregoing reasons, plaintiffs' tortious interference claims are dismissed.

## CONCLUSION

For all the reasons set forth above, defendant's motion to dismiss is granted, and plaintiffs' claims are dismissed. The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

                                                      /s/
                                                      Allyne R. Ross
                                                      United States District Judge

Dated: September 4, 2020
       Brooklyn, New York